**Thomas BURKA, Eugene Avent, Frank Doe, Tracey Devlin, Fitzgerald Cumberbatch, and Felix Arce, on behalf of themselves and all others similarly situated, Plaintiffs,**

**James Salazar, Plaintiff–Intervenor,**

**v.**

**NEW YORK CITY TRANSIT AUTHORITY, David L. Gunn, individually and in his official capacity as President of the New York City Transit Authority, and his successors in office; Robert F. Kiley, individually and in his official ca-**

---

442

pacity as Chairman of the New York City Transit Authority, and his successors in office; William I. Buchanan, III, individually and in his official capacity as Assistant Manager of Labor Relations for the New York City Transit Authority, and his successors in office; Richard Mandel, individually and in his official capacity as the Acting Medical Director of the New York City Transit Authority, and his successors in office, Defendants.

John FA, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORI-TY and David L. Gunn, individually and as President of the New York City Transit Authority, Defendants.

Nos. 85 Civ. 5751 (RPP), 89 Civ. 6536 (RPP).

United States District Court, S.D. New York.

Nov. 16, 1990.

The Legal Action Center of the City of New York, Inc., Margaret K. Brooks, Ellen M. Weber, Edward J. Davis, New York City, for Burka plaintiff class.

Gladstein, Reif & Meginniss, James Reif, New York City, for plaintiff-intervenor James Salazar.

Brooklyn Legal Services Corp. B., Jane Greengold Stevens, Brooklyn, N.Y., for plaintiff John Fa.

New York City Transit Authority, Office of Mr. Albert C. Cosenza, Gen. Counsel, Eugene Freidus, Deborah E. Collins, Brooklyn, N.Y., for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

On October 9, 1990 a hearing was held for the purpose of supplementing the findings of fact of the Court as contained in its opinion of June 5, 1990. Thereafter, the Court has received letters from counsel for the plaintiff class and counsel for the defendants. Based on the evidence presented by the plaintiffs and defendants, the Court makes the following findings of fact with respect to certain job titles for employees of the New York City Transit Authority:

### Elevator Operators

■ The tasks of elevator operators are not such as to constitute a danger either to the public or fellow employees. The position is found not to be safety sensitive.

### Elevator Maintainers

■ Elevator maintainers perform tasks, such as testing brakes, electrical systems and safety devices on elevators. These employees work in teams and are subject to little supervision. A member of the team will often work at separated locations, not in close proximity to one another. Thus, unobserved use of drugs could occur and could endanger the quality of their services. Accordingly, the safety of the public could be at risk. This title is found to be safety sensitive.

### Transit Property Protection Agents

■ Although Transit Property Protection Agents ("TPPAs") act, as their name implies, as security guards, they do not carry weapons. On occasion, they operate motorized vehicles in selected locations. If these employees operate vehicles on a regular basis in the presence of their fellow employees or the public, their task is safety sensitive. If their operation of motorized vehicles is only done on specific instructions of a supervisor in attendance, e.g., to move a double parked car on Jay Street, their task does not rise to the level of a safety sensitive occupation. The finding of the Court is that some of these employees are in safety sensitive roles and others are not.

### Structure Maintainers in the Power Department Carpenters (Structure Maintainers (A))

■ Carpenters generally work in teams. They always work under supervision when they are working on the trackway. Hearing Transcript, Testimony of Thomas Crino, at 51, 52. Trial Transcript, Testimony of Thomas Cassano, at 550–51.[1] The titles are not found to be safety sensitive.

### Masons (Structure Maintainers (B))

Masons work in teams and are generally subject to supervision while they work. T. Tr., Cassano, at 552. On trackway work, they are always subject to supervision. H.

---

1. Hereinafter the Opinion will refer to the Hearing Transcript by the name of the witness to whose testimony the Court refers and the page of the transcript, *e.g.,* H. Tr., Crino, at 52. The transcript of the actual trial will be referred to as "T. Tr.".

**444**

Tr., Crino, at 51, 52. The title is not found to be safety sensitive.

Iron Workers (Structure Maintainers (C))

■ These workers work in teams and typically with supervisors, although supervisors are not present at all times during the day. T. Tr., Crino, at 2384–86, 2387; T. Tr., Cassano, at 553. Nevertheless, the degree of supervision seems adequate, and the Court finds these titles not to be safety sensitive.

Plumbers (Structure Maintainers E)

■ Plumbers work in teams and always have supervision when they are working on the trackway or testing fire fighting lines, gas tanks. H. Tr., Crino, at 51–52; T. Tr., Cassano, at 551–52. The title is not found to be safety sensitive.

Sight Maintainers, Tinsmiths, Painters, Sign Painters, Heating and Air Conditioning Maintainers, Ventilation and Drainage Maintainers

■ These titles seldom work on the right of way although they may travel on the tracks to reach equipment or install repaired parts. *See, e.g.,* T. Tr., Cassano at 553–54, 557–61, 618; T. Tr., Crino, at 2386–87. When they do work on tracks, they are subject to supervision, so that the titles are not found to be safety sensitive.

Power Distribution Maintainers

■ Power Distribution Maintainers work in teams but may be dispatched singly to a circuit breaker house to operate switches. H. Tr., Crino, at 72. Their activities do not place the public or fellow employees in danger since the Systems Operator is responsible for on and off determinations as to electric current. H. Tr., Cassano, at 83–85; H. Tr., Crino, at 77–78. The title is not found to be safety sensitive.

The Court's attention has been called to the Implementation Guidelines for Anti-Drug Programs in Mass Transit of the Urban Mass Transit Administration ("UMTA"), United States Department of Transportation ("DOT"), 49 C.F.R. § 653 (March 1989), which have been suspended until further notice by the UMTA's Final Rule of January 25, 1990. The suspension came as a result of the decision in *Amalgamated Transit Union v. Skinner,* 894 F.2d 1362 (D.C.Cir.1990), which determined that the UMTA had exceeded its statutory authority and that Congress intended such guidelines to be locally developed. 894 F.2d at 1372. Nevertheless, the Court notes that the proposed guidelines would have defined as safety sensitive personnel providing non-vehicle maintenance or repair support for roadway and track, tunnels, subways and bridges, communications systems and equipment, and that the UMTA guidelines were similar to the DOT's drug testing program upheld as constitutional in *American Federation of Government Employees v. Skinner,* 885 F.2d 884 (D.C. Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). *See* 894 F.2d at 1372. Determinations by the UMTA should not be lightly disregarded by a Court. Accordingly, if the New York City Transit Authority submits a locally designed safety plan which is approved by the UMTA, the Court would reconsider its findings herein. Nothing in the Court's final judgment herein, however, should be deemed to preclude a change in the future, based on new evidence such as the UMTA approval of a new, carefully designed drug testing program properly brought to the Court's attention.

IT IS SO ORDERED.