James L. PLANE, and all other similarly situated Employees of the Defense Logistics Agency Located at Battle Creek, Michigan, Local 1626 American Federation of Government Employees, and all other similarly situated Employees of the Defense Logistics Agency Located at Battle Creek, Michigan, and Al Digennaro, and all other similarly situated Employees of the Defense Logistics Agency Located at Battle Creek, Michigan, Plaintiffs,

v.

UNITED STATES of America, Defense Logistics Agency, Defense Logistics Service Center, Richard Cheney, Secretary to the Department of Defense, and George M. Koburnus, Colonel, United States Air Force Commanding Officer, Defendants.

No. 1:90:CV:300.

United States District Court,
W.D. Michigan.

June 18, 1992.

Michael L. Fayette, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, Mich., Steven Z. Cohen, Cohen & Ellias, Birmingham, Mich., Joe Goldberg, Asst. Gen. Counsel, Alexia McCaskill, American Federation of Government Employees, AFL–CIO, General Counsels Office, Washington, D.C., for plaintiffs.

Agnes M. Kempker–Cloyd, U.S. Asst. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Theodore R. Pixley, Jr., Defense Reutilization & Marketing Service, Battle Creek, Mich., Stuart M. Gerson, Mary E. Goetten, Mary E. Magee, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, D.C., for defendants.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on defendants' and plaintiffs' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs, American Federation of Government Employees, AFL–CIO, ("AFGE") and its affiliates, on behalf of all AFGE bargaining unit civilian employees of defendant, Defense Logistics Agency ("DLA"), request this Court to declare that the mandatory random urinalysis drug testing provided for in the DLA Drug–Free Workplace Plan (the "Plan") as applied to employees occupying positions as Environmental Protection Specialists and Mobile Equipment Operators (excluding Motor Vehicle Operators, Braking–Switching and

Conducting and Locomotive Engineers, and including heavy equipment operators) is contrary to the fourth amendment to the United States Constitution.

Defendants' cross motion for summary judgment seeks a declaration by this Court that the random testing of these employees is valid under the fourth amendment. The parties filed their motions on October 15, 1991, and filed replies on November 1, 1991, in accord with the deadlines set by Magistrate Judge Doyle A. Rowland in his Order dated August 28, 1991.

## BACKGROUND

Plaintiffs originally filed this action on April 4, 1990, seeking a declaration by this Court that certain drug testing of civilian employees of DLA, as provided for by the DLA Drug Free Work Place Testing Program, violated the fourth amendment of the Constitution of the United States, as well as the Administrative Procedures Act, 5 U.S.C. § 706(2)(B).

On August 21, 1990, plaintiffs filed an amended complaint that identified the challenged types of drug testing: random, reasonable suspicion, and accident or safety mishap drug testing. The amended complaint also added Count II alleging that the drug testing program constituted discrimination in violation of the Civil Service Reform Act, 5 U.S.C.S. § 2302(b)(10).

On October 22, 1990, plaintiffs filed a motion for a preliminary injunction to enjoin the urinalysis drug testing of DLA employees. This Court, on October 31, 1990, granted the motion in part and denied it in part. *See Plane v. United States,* 750 F.Supp. 1358 (W.D.Mich.1990). Regarding accident or safety mishap drug testing, this Court found the DLA Plan to be overly broad and granted the preliminary injunction as to this category. Regarding reasonable suspicion testing, this Court refused to grant the injunction, finding that plaintiffs would not be irreparably harmed because that category of testing was not to begin until sometime in 1991.

Regarding random testing, this Court granted a preliminary injunction for the following employee classifications: investi-gators, criminal investigators, fire protection inspectors, and those environmental protection specialists who do not handle or inspect hazardous wastes and who do not act as first line spill coordinators. This Court found that plaintiffs had shown a likelihood of success on the merits and, also, irreparable harm had the injunction not been granted.

Random drug testing of the following employee classifications was not enjoined: environmental protection specialists who handle or inspect hazardous waste or who act as first line spill coordinators, heavy equipment operators, motor vehicle operators, braking-switching and conducting personnel and locomotive operators, police officers, guards, firefighters, fire protection specialists, nurses, and employees with secret and top secret security clearances. This Court found that plaintiffs had not shown a likelihood of success on the merits regarding employees in these job classifications.

On August 27, 1991, the parties entered into a joint stipulation of facts and agreed that because there were no remaining issues of material fact yet to be decided, the case would best be resolved by the cross-motions for summary judgment that this Court now decides. The joint stipulation was supplemented by an addendum, filed on September 11, 1991.

*Resolution of claims not addressed by the motions for summary judgment*

The parties resolved their disputes concerning reasonable suspicion testing and accident or unsafe practices testing in a settlement agreement and stipulation of dismissal, filed on September 17, 1991.

Concerning reasonable suspicion testing, the settlement agreement provided for an amendment to the DLA Plan that required a finding of a "pattern of abnormal or erratic" behavior consistent with the use of drugs or drug-related impairment in the workplace setting before testing a suspected employee.

With respect to accident or unsafe practices testing, the settlement agreement vacated the injunction ordered by this Court

concerning such testing and provided for an amendment to the DLA Drug Testing Plan that provided for this type of testing only if the employee was suspected of contributing to an on-the-job accident. This Court, on September 17, 1991, issued an Order vacating the preliminary injunction concerning the accident and unsafe practice testing.

The settlement agreement and stipulation of dismissal also dismissed Count II of the amended complaint, which alleged violations of the Civil Service Reform Act, and the portion of Count I which alleged violations of the Administrative Procedures Act.

As a result of the settlement agreement and stipulation of dismissal, the only issue addressed in the amended complaint that remains unresolved is whether random drug testing as provided in the DLA Plan violates the fourth amendment of the Constitution of the United States.

In their amended complaint, plaintiffs contested all random drug testing. However, through the joint stipulation of facts, and the addendum supplementing the stipulation, the parties narrowed the job classifications subject to random testing that remain in dispute. The joint stipulation of facts provides that the positions designated by the DLA Plan for drug testing include the following:

   a.  Critical sensitive positions involving access to secret or top secret information;

   b.  Environmental protection specialists (only those who work directly with hazardous wastes);

   c.  security specialists;

   d.  firefighters—including fire protection specialists and inspectors;

   e.  police;

   f.  guards;

   g.  nurses;

   h.  criminal investigators possessing "secret" security clearances;

   i.  transportation/mobile equipment operators, 5700 Group, including:

     i.  motor vehicle operators;

     ii.  braking-switching and conducting engineers, and locomotive engineers; and

     iii.  heavy equipment operators, including operators of fork lifts, tractors, cranes, and engineering equipment.

The joint stipulation, in ¶ 35, states that the only classifications that plaintiffs still contest are environmental protection specialists who handle hazardous wastes, heavy equipment operators, fire protection inspectors who do not perform firefighting duties, and physical security specialists.

The addendum to the joint stipulation states that fire protection inspectors subject to the testing will include only those who also have firefighting duties. Further, the addendum states that physical security specialists will be required to possess secret security clearances, as were already required of personnel security specialists and information security specialists. Plaintiffs agreed in the addendum not to challenge the testing of either fire protection inspectors who have firefighting duties or physical security specialists.

The only employee classifications that remain contested are environmental protection specialists and the heavy equipment operators, according to the joint stipulation, as supplemented by the addendum. These are the same classifications addressed in the cross-motions for summary judgment.[1]

---

1. This Court previously refused to grant a preliminary injunction regarding random testing of employees in the following job classifications: guards, police, nurses, motor vehicle operators, braking-switching and conducting engineers, locomotive engineers, and employees with secret and top secret security clearances. Because plaintiffs no longer contest the testing of employees in these positions, this Court will consider resolved plaintiffs' claims as to these positions.

This Court previously granted a preliminary injunction concerning the random testing of criminal investigators and fire protection inspectors. The joint stipulation states that criminal investigators possess "secret" security clearances and that only fire protection specialists who also have firefighting duties would be subject to testing. Apparently, plaintiffs are satisfied that testing of these classifications as described in the joint stipulations is now lawful. Therefore, this Court will consider plaintiffs'

## DISCUSSION

*Standard for Granting or Denying Summary Judgment*

This Court, on October 31, 1990, previously refused to issue a preliminary injunction in this case, as moved by plaintiffs, concerning the random urinalysis testing of employees in the job classifications still at issue, finding, first, that plaintiffs failed to meet their burden of showing a likelihood of success on the merits, and, also, that the balancing of the harm should an injunction issue weighed heavily in favor of defendants. *Plane v. United States*, 750 F.Supp. 1358, 1370–71 (W.D.Mich.1990).

However, the standards used for deciding that preliminary injunction vary considerably from the standards needed for summary judgment. In deciding whether to grant a preliminary injunction enjoining the urinalysis testing of employees in the subject positions, this Court had to consider, among other factors, whether plaintiffs had shown a "strong or substantial likelihood of success on the merits." *Id.* at 1362 (citing *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988)). However, in deciding whether to grant summary judgment, the movants and non-movants have a different burden to meet.

■ In reviewing a motion for summary judgment, this Court should only consider the narrow question of whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), *quoted in Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a '*genuine issue for trial.*' " *Historic Preservation*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson*, 477 U.S. 242, 106 S.Ct. 2505 (1986)). Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establish-

claims as to criminal investigators and fire protection specialists having firefighting duties as

having been resolved by the parties.

ing the existence of a genuine issue of fact." *Id.*

*Random urinalysis drug testing*

■ The motions for summary judgment concern only the lawfulness under the fourth amendment of the Constitution of the United States of mandatory random urinalysis drug testing of environmental protection specialists who handle hazardous materials and the transportation/mobile equipment operator classifications that remain contested, i.e., heavy equipment operators who operate fork lifts, tractors, cranes, and engineering equipment.

The leading case authorities on drug testing of employees are *Skinner v. Railway Labor Executive Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), and *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). *Von Raab* upheld the testing of Customs Service employees seeking positions directly involving the interdiction of drugs or requiring the incumbent to carry a firearm. More related to the remaining issues in the present case, *Skinner* upheld the post-accident testing of certain railroad workers occupying safety-sensitive positions.

"The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause...." U.S. Const. amend. IV. The Supreme Court has held that collection and testing of urine from employees are searches under the fourth amendment. *Skinner*, 489 U.S. at 617, 109 S.Ct. 1402, 1412, 103 L.Ed.2d 639, 660. However, in determining whether such testing was unreasonable under the fourth amendment, the Court employed a balancing test weighing the government interest involved against the intrusion on privacy. *Id.* at 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639, 661.

In *Skinner*, the government's interest in testing railroad employees for drugs after an accident without a showing of individualized suspicion was found to be compelling because the "[e]mployees subject to the tests discharge duties fraught with risks of injury to others that even a momentary

lapse of attention can have disastrous consequences." *Id.* at 628, 109 S.Ct. 1402, 1419, 103 L.Ed.2d 639, 667. The Court further noted that the employees subject to the test could cause great human loss before any signs of impairment become noticeable to supervisors or others, as such employees will seldom display any outward signs detectable by lay persons, or in many cases, even physicians. *Id.*

The Court found that the testing would supply a valuable means for deterring employees engaged in safety sensitive tasks from using controlled substances, and that the testing could also provide invaluable information about the causes of major railroad accidents. *Id.* at 630–31, 109 S.Ct. 1402, 1419–20, 103 L.Ed.2d 639, 668.

Regarding the degree of invasion of privacy, the employees in *Skinner* were found to have a reduced expectation of privacy by reason of participating in an industry that is regulated pervasively to ensure safety, and that, toward this goal, most railroads require employees to undergo periodic physical examinations. *Id.* at 627, 109 S.Ct. 1402, 1418, 103 L.Ed.2d 639, 666.

*Environmental Protection Specialists*

Defendants assert in their brief in support of summary judgment that the DLA Plan will subject to random drug testing environmental protection inspectors "who directly handle hazardous wastes." Defendants cite ¶ 30(b) of the joint stipulation of facts in support of their assurance that only environmental protection specialists who actually work with hazardous wastes are subject to random testing. Plaintiffs acknowledge in their brief in support of their motion for summary judgment that the environmental protection specialists specified in ¶ 30(b) of the joint stipulation handle hazardous property and perform inspections.

Plaintiffs also acknowledge that the duties assigned to environmental protection specialists identified in ¶ 30(b) are very similar to those assigned to Federal Railroad Administration hazardous material inspectors in *American Federation of Government Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989) (*Skinner* (D.C.)). In that case, the Court upheld urinalysis testing

holding that ensuring these employees, whose duties were intimately related to the prevention of public harm, were certifiably drug-free was a reasonable precaution against the feared harm to the public. *Id.* at 891. "The public should not have to bear the risk that employees who may suffer from impaired perception and judgment occupy positions where they are so responsible for protecting the public." *Id.* at 891.

Plaintiffs attempt to distinguish *Skinner* (D.C.) by contending that an essential factor in the holding was that the inspectors performed duties which were "intimately involved with safe transportation," citing *Id.* at 890. However, defendants persuasively argue that the court actually focused on the fact that inspectors were exposed to hazardous materials and may be required to inspect such materials and verify packaging and labeling. The portion of the opinion discussing specifically the testing of inspectors makes no mention of the limited concern for safe transportation. Further, in the context of hazardous wastes and materials, the compelling government interest obviously is the public health and safety danger associated with improper handling of these materials.

Not surprisingly, plaintiffs do not argue that the environmental protection specialists identified in ¶ 30(b) of the joint stipulation would not endanger public health and safety if they were using drugs. Certainly, defendants have demonstrated a compelling interest in protecting safety and health that will be promoted by the deterrence and detection of drug use that the random testing program will provide.

Concerning the expectation of privacy, plaintiffs acknowledge that the environmental protection specialists must submit to physical examinations. Similarly, most of the railroad employees in *Skinner* were required to have physicals, and the Court found that such a requirement diminished the employees' expectations of privacy. *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. at 627–28, 109 S.Ct. 1402, 1418, 103 L.Ed.2d 639, 667.

On balance, the government's interest in preventing public harm from mishandled or improperly inspected hazardous materials is substantial enough with respect to environmental protection specialists that directly handle these materials that it outweighs the intrusion on the privacy of these employees caused by the urinalysis drug testing.

*Mobile Equipment Operators*

Plaintiffs now contest the random drug testing of only four positions contained in the category of transportation/mobile equipment operator: fork-lift operator, tractor operator, engineering operator, and crane operator (hereinafter "heavy equipment operators"). Plaintiffs acknowledge in their brief in support of summary judgment that all of these positions involve operating very heavy machinery.

The diesel fork-lift operators handle a vehicle weighing over 50 tons and use it to load, move, and stack large containers weighing 5,000 to 15,000 pounds. Electric-powered fork-lift operators handle a vehicle that is capable of lifting loads weighing less than 10,000 pounds to heights up to 14 feet. They also operate a warehouse tractor that transports items loaded on up to five attached trailers. Exhibit F of plaintiffs' brief in support of summary judgment.

The tractor operators tow trailers to and from the Directorate of Installation Services warehouses through narrow passages, around stacks, through congested areas, and up ramps and inclines. They must ensure that the trailers are loaded to the proper levels and that the couplings are safe and secure. They are responsible for proper speed, clearances, and weight limitations. Exhibit G of plaintiffs' brief.

The engineering equipment operators must handle electric or gasoline-powered fork-lifts capable of lifting 15,000 pounds. Also, they must ensure that dangerous property is tagged. Further, they must operate a cutting torch to cut metal into shorter lengths. In carrying out this duty, the employees must be aware of the different gases used and must be careful to avoid fuel cells and other hazardous devices that may be encountered. Finally,

these employees also must operate a bull-dozer. Exhibit H of plaintiffs' brief.

The crane operators handle crawler type boom cranes with capacities ranging from 20 to 50 tons and with boom lengths ranging from 30 to 50 feet. The cranes are used to load and unload scrap metal and other large items. The crane operators must be able to follow signals given from the ground crew. They must plan positioning of the crane to ensure maximum freedom of movement and maximum lifting capacity. They are responsible for tagging any property that could be dangerous to employee or public health or safety. They also operate bulldozers and gasoline powered fork-lifts. Exhibit I to plaintiffs' brief.

Plaintiffs contend that several of the factors that courts have used as hallmarks in determining whether the balance of the government's interest sufficiently outweighs the intrusion on privacy caused by subjecting employees to drug tests are missing in this case. They identify the following factors: employees' transportation of passengers as part of their duties, immediacy of the harm posed by employees in performing their duties, employees' contact with the public in performing their duties, and a diminished expectation of privacy on the part of the employees subject to the testing. Each of these points will be dealt with separately.

Plaintiffs cite several cases in support of their argument that federal cases involving vehicle operators allow drug testing only because the driver-employees in those cases carried passengers. *See Tanks v. Greater Cleveland Regional Transit Authority,* 930 F.2d 475 (6th Cir.1991); *American Federation of Government Employees v. Cavazos,* 721 F.Supp. 1361 (D.D.C. 1989); and *National Treasury Employees Union v. Yeutter,* 918 F.2d 968 (D.C.Cir. 1990). However, in each of these cases, the respective courts were faced with situations involving motor vehicles carrying passengers; therefore, it is to be expected that the extra danger posed by carrying passengers would be included in the balancing of interests.

In this case, we are not faced with the types of motor vehicles involved in those cases. Here, the heavy equipment being operated carries and maneuvers not passengers, but very heavy containers, scrap metal, and multiple trailers. Plaintiffs, however, have found and attached an unpublished case in which random testing of employees within an equipment operations and maintenance class was enjoined. *American Federation of Government Employees, Local 1616 v. Thornburgh,* 798 F.Supp. 597 (D.C.N.D.Cal.1991). The court found that an adequate direct nexus between the duties of employees within this classification and the government's interest in public safety existed only for those employees who operate vehicles carrying passengers or security-sensitive material. Unfortunately, the duties of the employees involved were not explained in the opinion, and there is no indication about the immediacy and magnitude of the safety risks these employees pose solely from operating equipment. Because these risks were not discussed, I have no way of comparing the facts of this case with those in *Local 1616,* to determine whether that court's reasoning is persuasive.

It is obvious that the safety and health of people can be significantly endangered by employees operating equipment that do not carry passengers. In such situations, the government has a compelling interest in detecting and deterring drug use by employees operating such equipment. As the Supreme Court stressed in *Skinner,* the employees' duties were "fraught with risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Skinner,* 489 U.S. at 628, 109 S.Ct. at 1419, 103 L.Ed.2d at 667.

In the present case, operating heavy equipment that lifts or moves items weighing thousands of pounds and operating cutting torches near fuel cells and other hazardous devices creates a great risk of harm to other persons in the area if the operator is impaired due to drug use. Plaintiffs have not suggested that this danger is insignificant. Rather, plaintiffs contend that

the danger is not immediate and is not related to protecting the public.

Plaintiffs contend that the danger posed by the heavy equipment operators is not as urgent as the dangers posed by employees in those cases upholding drug testing, such as employees operating a locomotive carrying passengers. *Skinner,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639. Even assuming, *arguendo,* that this comparison is accurate, the harm sought to be avoided would still be immediate, in that it could materialize upon any lapse of attention by an operator of the heavy equipment.

Plaintiffs argue, further, that other persons who would potentially be endangered by the operation of the heavy equipment are aware of the general hazards involved and would be more alert and aware of the surrounding hazards at the DLA facility, unlike members of the public or passengers who were endangered in other cases. Plaintiffs, however, ignore the fact that even if the people coming in contact with the heavy equipment operators are aware of the dangers involved, they are not expecting that the operators might be impaired from the use of drugs.

Plaintiffs argue that the precedents support drug testing only when the general public is at risk. However, as defendants note in their brief, the Supreme Court specifically stated in *Skinner* that the "governmental interest in ensuring the safety of the traveling public and *of the employees themselves* plainly justifies prohibiting covered employees from using alcohol or drugs on duty, or while subject to being called for duty." (emphasis added). *Skinner,* 489 U.S. at 621, 109 S.Ct. at 1415, 103 L.Ed.2d at 662. Plaintiffs have cited no cases holding that the government's interest in safety must involve the safety of the public in order for it to be sufficiently compelling to warrant random drug testing of employees.

Also, even if all of the activities undertaken by the heavy equipment operators occur at the DLA facility, this does not mean that members of the public may not at times also be at the facility and endangered by any drug-impaired operation of the equipment. Even assuming, *arguendo,* that presence of the general public at the site is rare or non-existent, as indicated above, the government still has a compelling interest in protecting the safety of all persons from the dangers posed by the heavy equipment operators, whether or not they are non-employees.

If the fork-lift or crane operator improperly lifts a load and drops it onto other employees, the harm will be immediate. If a cutting torch operator improperly cuts into hazardous materials while other employees are nearby, the harm again could be immediate. If a tractor operator fails to navigate the trailers properly such that they tip over, or if the operator fails to properly secure the couplings before towing trailers up a ramp, the harm again could be immediate. If the operator of the heavy equipment does not watch carefully, he or she may back up over some unsuspecting person, and the harm would be immediate and quite significant. Anyone injured or killed by these actions would have assumed that the operators were attentively performing their duties without being impaired by drugs. Plaintiffs have failed to identify any facts or reasoning to show that these conclusions are not accurate.

Defendants have demonstrated that the random drug testing program is designed to detect and deter drug use by the operators of heavy equipment in order to promote the government's compelling interest in protecting safety and health.

Nevertheless, plaintiffs argue that the balancing involved in this case is at variance from the balancing involved in those cases upholding drug testing. Plaintiffs argue that, unlike employees in the other cases, the employees in this case had no diminished expectation of privacy regarding the urinalysis drug tests, as they were not subject to periodic physical exams.

Although it is true that in many of the cases upholding drug testing of employees the courts found a diminished expectation of privacy, including *Skinner* and *Von Raab,* I can find no authority suggesting that the privacy interest must be diminish-

ed in order for the government's interest to sufficiently outweigh it. The court in *American Federation of Government Employees, Local 1616 v. Thornburgh*, 798 F.Supp. 597 (D.C.N.D.Cal.1991), cited by plaintiffs, upheld the drug testing of employees in the equipment and maintenance operations if they carried passengers or security-sensitive material. The court did not mention any factor that would have caused the employees to have a diminished expectation of privacy.

Also, while the heavy equipment operators are not required to undergo physicals, they are expected to be physically fit enough to handle the job requirements, including lifting up to 70 to 100 pound items. Certainly, employees subject to such physical strength requirements could expect that their health may become the subject of inquiry. If that is the case, then they have a reduced expectation of privacy regarding information about their health, and plaintiffs argument has no basis in fact.

However, even if there is no reduced expectation of privacy, it seems to me that the government's interest in protecting the health and safety of its citizens from the obvious dangers resulting from drug-impaired operation of heavy machinery still outweighs the employees' interests in privacy.

## CONCLUSION

Plaintiffs acknowledge that there are no genuine issues of material fact remaining in this case. Plaintiffs have provided no evidence to suggest that defendants' interest is not compelling or that the drug testing is not important in promoting the interest. Plaintiffs have provided *no evidence* showing that the invasion of the privacy of the employees at issue is not outweighed by the safety and health interest that the testing program promotes. Therefore, plaintiffs have not carried their burden to show that a rational trier of fact could find for them.

As held by the Supreme Court in *Skinner* and *Von Raab*, government mandated urinalysis drug testing is not an unreason-

able search and does not violate the fourth amendment when the government's compelling interest outweighs the intrusion on the employees' privacy. The facts of this case conclusively show that random drug testing of heavy equipment operators or environmental protection specialists who directly handle or inspect hazardous materials promotes a compelling government interest in protecting the safety of its employees and the public. Further, this Court holds that the safety interest promoted by the random drug testing program outweighs the intrusion on the privacy of the employees in these job classifications.

For the foregoing reasons, an order will be entered denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment.